# EXHIBIT A

**FILED**

18 JAN 18 PM 2:52

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-01582-1 SEA

1

2

3

4

5

6

7

8

9    SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

10

| | |
|---|---|
| THE RONALD AND MAXINE LINDE FOUNDATION, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    vs.<br><br>FUNKO, INC., BRIAN MARIOTTI, RUSSELL NICKEL, KEN BROTMAN, GINO DELLOMO, ADAM KRIGER, RICHARD McNALLY, CHARLES DENSON, DIANE IRVINE, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, ACON INVESTMENTS, L.L.C. and FUNDAMENTAL CAPITAL, LLC,<br><br>                    Defendants. | Case No.<br><br> CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933** |

11

12

13

14

15

16

17

18

19

20

21

22

23    Plaintiff The Ronald and Maxine Linde Foundation ("plaintiff") individually and on

24    behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's

25    complaint against defendants, alleges the following based upon personal knowledge as to

26    plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 − 1



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of the U.S. Securities and Exchange Commission ("SEC") filings of Funko, Inc. ("Funko" or the "Company"), Company press releases, and analyst reports, media reports and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased shares of Funko Class A common stock in or traceable to the Company's November 1, 2017 initial public offering (the "IPO") seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act") against Funko, certain of the Company's directors and officers, the private equity sponsors of the IPO and the IPO's underwriters.

2.      Funko is a pop culture consumer products company.  It develops products based on popular movies, TV shows, video games, musicians and sports teams.  Its most familiar products include bobble head dolls based on pop culture icons known as Pop! collectibles.

3.      The Registration Statement, which incorporated the Prospectus, for the Company's IPO (the "Registration Statement") contained untrue statements of material facts, omitted material facts necessary to make statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.  Specifically, the Registration Statement failed to disclose, *inter alia*: (i) that Funko's purportedly unique and superior design and production model and passionate fan base had not insulated the Company from adverse trends affecting the overall toy industry; (ii) that the Company had overloaded its sales channels with excess inventory during the same quarter as the IPO, as demand for the Company's products had slowed; (iii) that the adjusted EBITDA 86% compound annual growth rate ("CAGR") the Company touted in the Registration Statement should not be relied on as a meaningful measure of the true state of the Company's business, as it

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 – 2



HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

excluded a variety of costs necessary to understanding Funko's business and prospects and failed to account for slowing sales trends and the buildup of overloaded inventory in the Company's sales channels; (iv) that the Company had materially overstated the value of its intangible assets, including its intellectual property, as of the time of the IPO; and (v) that the Company's business, prospects and ability to service its long-term debt had been materially impaired by the time of the IPO as a result of adverse industry, sales and earnings trends.

4.      On December 21, 2017, the price of Funko's Class A common stock closed at a meager $6.00 per share, or **50%** below the Company's IPO price of $12 per share less than two months earlier.

## JURISDICTION AND VENUE

5.      The claims alleged herein arise under §§11, 12(a)(2) and 15 of the 1933 Act, 15 U.S.C. §§77k, 771(a)(2) and 77o.

6.      This Court has jurisdiction over the subject matter of this action pursuant to Rev. Code Wash. §2.08.010 and §22 of the 1933 Act.  Section 22 of the 1933 Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court in the United States."  Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law.  This is an action asserting federal law claims.  Thus, it does not fall within the definition of a "covered class action" under §16(b)-(c) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998.

7.      Venue is proper in this County pursuant to Rev. Code Wash. §4.12.025 and §22 of the 1933 Act because many of the acts and practices complained of herein occurred in substantial part in this County and certain defendants reside in or conduct business in this County.

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 − 3



**PARTIES**

8.      Plaintiff The Ronald and Maxine Linde Foundation acquired shares of Funko Class A common stock in the IPO and has been damaged thereby.

9.      Defendant Funko is a consumer-products company based in Everett, Washington. Its Class A common stock trades on the Nasdaq Global Select Market ("Nasdaq") under the ticker symbol "FNKO."

10.     Defendant Brian Mariotti ("Mariotti") was the Chief Executive Officer ("CEO") and a director of the Company at the time of the IPO.

11.     Defendant Russell Nickel ("Nickel") was the Chief Financial Officer ("CFO") of the Company at the time of the IPO.

12.     Defendant Ken Brotman ("Brotman") was the Chairman of the Board of Directors of Funko (the "Board") at the time of the IPO and is a founder and managing partner of defendant ACON Investments, L.L.C. ("ACON").

13.     Defendant Gino Dellomo ("Dellomo") was a director and member of the Board at the time of the IPO and is a director of ACON.

14.     Defendant Adam Kriger ("Kriger") was a director and member of the Board at the time of the IPO and is an executive partner at ACON.

15.     Defendant Richard McNally ("McNally") was a director and member of the Board at the time of the IPO and is a founder and partner at defendant Fundamental Capital, LLC ("Fundamental").

16.     Defendant Charles Denson ("Denson") was a director and member of the Board at the time of the IPO.

17.     Defendant Diane Irvine ("Irvine") was a director and member of the Board at the time of the IPO.

18.     The defendants identified in ¶¶10-17 are referred to herein as the "Individual Defendants."  The Individual Defendants signed the Registration Statement and, as directors

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 – 4



HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

and/or executive officers of the Company, participated in the solicitation and sale of Funko Class A common stock to investors in the IPO for their own benefit and the benefit of Funko.

19.     Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively referred to as the "Underwriter Defendants") served as lead underwriters for the IPO and sold millions of shares of Funko Class A common stock in the IPO, for which they received certain fees and commissions.

20.     The Underwriter Defendants drafted and disseminated the Registration Statement. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

21.     Defendant ACON is a Washington D.C.-based private equity firm.  It controlled Funko, together with Fundamental, both before and after the IPO.  Shortly before the IPO, but after giving effect to a series of intermediate transactions, ACON was the beneficial owner of 100% of Funko's Class A common stock.

22.     Defendant Fundamental is a San Francisco-based private equity firm.  It controlled Funko, together with ACON, both before and after the IPO.

23.     The Registration Statement lists defendants ACON and Fundamental as control persons of Funko by virtue of their voting control, ability to appoint Board members, and certain other rights that they are afforded by virtue of a Stockholders Agreement and other agreements with the Company.

## SUBSTANTIVE ALLEGATIONS

24.     Defendant Funko is a consumer products company. It develops licensing relationships with a variety of content providers and creates figurines and other products based on well-known characters from movies, television, music, video games and from similar pop culture references.  It then sells these products to consumers through a diverse network of retail channels, including specialty retailers, mass-market retailers and e-commerce sites.



25.     The Company's most familiar products are its Pop! collectibles, which are bobblehead dolls based on popular culture characters and icons.  Sales of Pop! collectibles accounted for approximately 68% of the Company's total net sales for the six months ended June 30, 2017.

26.     In May 2013, private equity firm Fundamental obtained a controlling interest in Funko.  In October 2015, private equity firm ACON acquired its interest in Funko from Fundamental, while Fundamental retained a stake in the Company.  Under the control of defendants Fundamental and ACON, Funko paid these private equity firms more than $100 million in fees, special dividends, earn-out payments and other financial arrangements.  Funko used debt to finance much of these payments and, as a result, the debt load of the Company increased significantly in the years leading up to the IPO.  For example, the total debt load of Funko's predecessor entity increased from approximately $217.8 million as of December 31, 2016, to approximately $339.1 million as of June 30, 2017, an increase of more than 55%, in only six months.  Funko stated that it would use the proceeds from the IPO to pay off a portion of this debt.

27.     Defendants ACON and Fundamental also retained substantial control and influence over Funko even after the IPO.  As stated in the Registration Statement:

> After the consummation of this offering, we will be considered a "controlled company" for the purposes of the Nasdaq rules as ACON, Fundamental and Brian Mariotti, our Chief Executive Officer, will, in the aggregate, have more than 50% of the voting power for the election of directors.

28.     In addition, Funko adopted a dual class share voting structure that allowed ACON and Fundamental to maintain voting control even with a diminished economic interest in the Company.  According to the Registration Statement, following the IPO, outside Class A shareholders in the Company would have 44.6% of the economic interest in Funko, but only 21.6% of its voting interest.  The remainder of the voting interest would be held by funds affiliated with ACON and Fundamental, as well as certain other parties, by way of their

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 – 6



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

ownership of voting Class B stock, which does not have any economic interest in the Company. In addition, ACON would hold 12.9 million Class A shares, representing 55.4% of the economic interest in Funko.  ACON and Fundamental also retained the right to appoint certain members of the Board and other rights vis-à-vis the Company pursuant to a Stockholders Agreement and other agreements.

29.     On or about October 6, 2017, the Company filed with the SEC a registration statement on Form S-1 for the IPO, which was declared effective on November 1, 2017 (together with all amendments, the "Registration Statement").  The next day, the Company filed a free writing prospectus for the IPO on Form FWP.  On November 3, 2017, Funko filed the prospectus for the IPO on Form 424B4 (the "Prospectus"), which incorporated and formed part of the Registration Statement.  Together, the Registration Statement and Prospectus were used to sell to the investing public approximately 10.4 million shares of Funko Class A common stock in the IPO at $12 per share.

30.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

31.     Specifically, the Registration Statement stated that the Company had experienced steady and robust growth in the years leading up to the IPO as a result of Funko's business strategy and market-leading position.  It stated in pertinent part:

> Our financial performance reflects the strong growth of our business.  From 2014 to 2016 *we expanded our net sales, net income and Adjusted EBITDA at a 100%, a 17% and an 86% compound annual growth rate, or CAGR, respectively*.  We achieved this growth without reliance on a singular "hit" property as no single property accounted for more than 15% of annual net sales during that period.  *We believe our strong growth and profitability reflect our pop culture consumer products leadership.*

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594



Period from January 1, 2015 through October 30, 2015

Period from October 31, 2015 through December 31, 2015

32.     The Registration Statement also represented that Funko had more than $243 million in net intangible assets subject to amortization as of December 31, 2016, including more than $114 million in intellectual property assets, as reflected in the following chart (in thousands):

| | December 31, 2016 | | |
| --- | --- | --- | --- |
| | Gross Carrying Amount | Accumulated Amortization | Intangible Assets, Net |
| Intangible assets subject to amortization | | | |
| Intellectual property | $114,411 | $  (6,674) | $107,737 |
| Trade names | 81,358 | (4,746) | 76,612 |
| Customer relationships | 63,129 | (3,682) | 59,447 |
| Balance as of December 31, 2016 | $258,898 | $(15,102) | $243,796 |

33.     The Registration Statement further claimed that the amount of Funko's net intangible assets had increased to approximately $258 million and its goodwill to $106.5 million by June 30, 2017, despite the fact that the Company largely relied on the intellectual property of third-party content providers.

34.     In addition, the Registration Statement represented that the Company's diverse portfolio and unique production and design model insulated it from adverse trends in the toy and retail industry, stating in pertinent part:

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 − 8



We have strong licensing relationships with many established content providers, such as Disney, HBO, LucasFilm, Marvel, the National Football League and Warner Brothers.  We strive to license every pop culture property that we believe is relevant to consumers.  ***We currently have licensed over 1,000 properties, which we believe represents one of the largest portfolios in our industry,*** and from which we can create multiple products based on each character within those properties.  Content providers trust us to create unique, stylized extensions of their intellectual property that extend the relevance of their content with consumers through ongoing engagement, helping to maximize the lifetime value of their content.  We believe we have benefited from a trend of content providers consolidating their relationships to do more business with fewer licensees.  ***Our track record of obtaining licenses from content providers, together with our proven ability to renew and extend the scope of our licenses, demonstrates the trust content providers place in us***.

*        *        *

We have developed a nimble and low-fixed cost production model.  The strength of our in-house creative team and relationships with content providers, retailers and third-party manufacturers allows us to move from product concept to pre-selling a new product in as few as 24 hours.  We typically have a new figure on the store shelf between 110 and 200 days and can have it on the shelf in as few as 70 days.  As a result, ***we can dynamically manage our business to balance current content releases and pop culture trends*** with content based on classic evergreen properties, such as Mickey Mouse or classic Batman.  ***This has allowed us to deliver significant growth while lessening our dependence on individual content releases***.

35.     Similarly, the Registration Statement stated that Funko's diversity of product offerings drove revenue "visibility and growth," while limiting the Company's exposure to any one single content provider or industry trend:

**Dynamic Business Model Drives Revenue Visibility and Growth**

Our business is diversified across content providers and properties, product categories, and sales channels.  As a result, ***we can dynamically manage our business to capitalize on pop culture trends, which has allowed us to deliver significant growth while lessening our dependence on individual content releases***.  Our content provider relationships are highly diversified.  We generated only approximately 8% and 15% of net sales from our top property for the six months ended June 30, 2017 and the year ended December 31, 2016, respectively, and the portion of our net



sales for the six months ended June 30, 2017 and the year ended December 31, 2016 attributable to our top five properties was 27% and 36%, respectively.  Our products are balanced across our licensed property categories.  In 2016, we generated approximately 43% of net sales from classic evergreen properties, approximately 24% from movie release properties, approximately 20% from current video game properties and approximately 12% from current TV properties.  We have visibility into the new release schedule of our content providers and our expansive license portfolio allows us to dynamically manage new product creation.  This allows us to adjust the mix of products based on classic evergreen properties and new releases, depending on the media release cycle.  In addition, we sell our products worldwide through a diverse group of sales channels, including specialty retailers, distributors, mass-market retailers, e-commerce sites and direct-to-consumer.

36.     The Registration Statement also stated that Funko's purportedly active and engaged customer base had led to consistent growth that would continue into the future:

With our unique style, expertise in pop culture, broad product distribution and highly accessible price points, ***we have developed a passionate following for our products that has underpinned our growth.***  We believe we sit at the nexus of pop culture – content providers value us for our broad network of retail customers, retailers value us for our broad portfolio of licensed pop culture products and pop culture insights, and consumers value us for our distinct, stylized products and the content they represent.  We believe our innovative product design and market positioning have disrupted the licensed product markets and helped to define today's pop culture products category.

\*          \*          \*

We believe we drive meaningful traffic to our retail customers' stores because ***our products have their own built-in fan base***, are refreshed regularly creating a "treasure hunt" shopping experience for consumers, and are often supplemented with exclusive, limited-time products that are highlighted on social media.  We believe these merchandising strategies create a sense of urgency with consumers that encourages repeat visits to our retail customers. . . .

. . . Our products are generally priced under $10, which ***allows our diverse consumer base to express their fandom frequently and impulsively***.  We continue to introduce innovative products designed to facilitate fan engagement at different price points and styles.  In addition, ***our fans routinely express their passion for our products and brands*** through social media and live pop culture events, such as Comic-Con or Star Wars Celebration.

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 – 10



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

37.     The Registration Statement also listed the Company's strategies, which Funko "believe[d] w[ould] *drive substantial future growth*," including: (i) "Increase Sales with Existing Retail Customers"; (ii) "Add New Retail Customers and Expand Into New Channels"; (iii) "Broaden Our Product Offerings"; (iv) "Expand Internationally"; and (v) "Leverage the Funko Brand Across Multiple Channels."

38.     Furthermore, the Registration Statement provided Funko's preliminary results for the most recent fiscal quarter, ending September 30, 2017.  It stated that the Company's sales had increased 21%, while its gross margins had increased at least 170 basis points, stating in pertinent part:

> *We estimate that net sales for the three months ended September 30, 2017 will range between $142.3 million and $142.8 million, an increase of approximately 21%,* compared to net sales of $118.0 million for the three months ended September 30, 2016. The increase in net sales for the three months ended September 30, 2017 relative to the prior year period was driven in part by an increase in international sales, primarily in Europe as a result of our Underground Toys Acquisition.  *We estimate that net income for the three months ended September 30, 2017 will range between $4.9 million and $5.9 million, a decrease of approximately 69%, compared to net income of $17.2 million for the three months ended September 30, 2016*.  We estimate that gross margin (exclusive of depreciation and amortization) for the three months ended September 30, 2017 will range between 40.9% and 41.4%, compared to gross margin (exclusive of depreciation and amortization) of 39.2% for the three months ended September 30, 2016. . . .  We estimate that Adjusted EBITDA for the three months ended September 30, 2017 will range between $23.8 million and $24.8 million, compared to Adjusted EBITDA of $31.0 million for the three months ended September 30, 2016. Included in our estimated net income and Adjusted EBITDA is the impact of a $4.9 million reserve on the outstanding accounts receivable balance for Toys 'R' Us, Inc., which filed for voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in September 2017.

39.     The statements in ¶¶31-38 were materially false and misleading when made because they failed to disclose:



(a)     that Funko's purportedly unique and superior design and production model and passionate fan base had not insulated the Company from adverse trends affecting the overall toy industry;

(b)     that the Company had overloaded its sales channels with excess inventory, including with its flagship Pop! collectibles line, as demand for the Company's products had slowed during the same quarter in which defendants had carried out the IPO, increasing the likelihood that Funko products would be sold at a discount or on clearance during the critical 2017 holiday shopping season;

(c)     that the Company's purported adjusted EBITDA 86% CAGR did not reflect the true state of the Company's business, as it excluded a variety of costs necessary to the understanding of Funko's business and prospects – such as tens of millions of dollars in acquisition costs, depreciation costs and interest expenses – and failed to account for slowing sales trends and Funko's overloading of sales channels, such that the Company's business and operations at the time of the IPO did not match the historic results touted in the Registration Statement;

(d)     that the Company's net intangible assets and intellectual property had been materially overstated in the Registration Statement; and

(e)     that the Company's business, prospects and ability to service its long-term debt had been materially impaired by the time of the IPO as a result of the adverse industry, sales and earnings trends discussed in (a)-(d), above.

40.     Moreover, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii), required defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on the sales or revenues or income from continuing operations."  Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503, requires, in the "Risk Factor" section of registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or



risky" and that each risk factor "adequately describes the risk." The failure of the Registration Statement to disclose that the Company was experiencing adverse sales and earnings trends far below a true 86% CAGR and that Funko had overloaded its sales channels with excess inventory violated 17 C.F.R. §229.303(a)(3)(ii), because these undisclosed facts would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations. This failure also violated 17 C.F.R. §229.503, because these specific risks were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in shares of Funko Class A common stock speculative or risky.

41.     Soon after defendants launched the IPO, *Bloomberg* published an article that charged the Company with "funhouse accounting" and questioned the veracity of the representations that Funko had made in the Registration Statement. The article claimed that the Company had inflated its adjusted EBITDA figures and was touting a misleading 86% earnings growth rate, when in fact the Company had suffered a $10 million loss in the first half of 2017, by omitting tens of millions of dollars in acquisition expenses, depreciation costs and interest expenses. Multiple reports also questioned the true value of Funko's intellectual property assets given that the Company relied primarily on licensing the intellectual property of third-party content providers. For example, one analyst report revealed that Funko had "***no real brands or intellectual property***."

42.     Then, just weeks after the IPO, it was revealed that Funko's sales channels were overloaded with inventory as of the time of the IPO and markdowns were damaging Funko's business. In a December 19, 2017 report, BMO Capital Markets analysts called these facts a "warning sign," immediately downgraded the Company, asserted valuation multiples existing at the time of the IPO should be lowered, and cut valuation multiples by over 10%.

43.     Days later, on December 21, 2017, Funko Class A common stock closed at $6.00 per share. This price represented a ***50% decline*** from the price at which Funko stock had been sold to the investing public in the IPO less than two months earlier.



**CLASS ACTION ALLEGATIONS**

44.    Plaintiff brings this action as a class action pursuant to CR 23 on behalf of a class consisting of all persons or entities who acquired Funko Class A common stock pursuant and/or traceable to the false and misleading Registration Statement (Registration No. 333-220856) issued in connection with the Company's IPO conducted on or about November 1, 2017 (the "Class").  Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

45.    The members of the Class are so numerous that joinder of all members is impracticable.  Funko Class A common stock is actively traded on the Nasdaq and millions of shares were sold in the IPO.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Funko or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

47.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether defendants violated the 1933 Act;

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 – 14



(b)      whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business and operations of Funko; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

49.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### For Violations of §11 of the 1933 Act
### Against All Defendants Except ACON and Fundamental

50.      Plaintiff repeats and realleges ¶¶1-49 by reference.

51.      This Cause of Action is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants except ACON and Fundamental.

52.      This Cause of Action does not sound in fraud.  Plaintiff does not allege that the Individual Defendants or the Underwriter Defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

53.      The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

54.      Funko is the registrant for the IPO.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

55.     As issuer of the shares, Funko is strictly liable to plaintiff and the Class for the misstatements and omissions.

56.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

57.     By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

58.     Plaintiff acquired Funko Class A common stock pursuant and/or traceable to the Registration Statement for the IPO.

59.     Plaintiff and the Class have sustained damages.  The value of Funko Class A common stock has declined substantially subsequent to and due to defendants' violations.

60.     At the time of their purchases of Funko Class A common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time plaintiff filed this complaint.

**SECOND CAUSE OF ACTION**

**For Violation of §12(a)(2) of the 1933 Act**
**Against All Defendants Except ACON and Fundamental**

61.     Plaintiff repeats and realleges ¶¶1-60 by reference.

62.     This Cause of Action is brought pursuant to §12(a)(2) of the 1933 Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against all defendants except ACON and Fundamental.



63.     This Cause of Action does not sound in fraud.  Plaintiff does not allege that the Individual Defendants or the Underwriter Defendants had scienter or fraudulent intent, which are not elements of a §12(a)(2) claim.

64.     By means of the defective Prospectus, these defendants promoted and sold Funko Class A common stock to plaintiff and other members of the Class for their own benefit and the benefit of their associates.

65.     The Prospectus contained untrue statements of material fact and concealed and failed to disclose material facts, as detailed above.  Defendants owed plaintiff and other members of the Class who purchased Funko Class A common stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

66.     Plaintiff did not know, nor in the exercise of reasonable diligence could plaintiff have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired Funko Class A common stock.

67.     By reason of the conduct alleged herein, defendants named herein violated §12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased Funko Class A common stock pursuant to the Prospectus sustained substantial damages in connection with their purchases of stock. Accordingly, plaintiff and the other members of the Class who hold the Class A common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to the defendants sued herein.  Class members who have sold their stock seek damages to the extent permitted by law.

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**THIRD CAUSE OF ACTION**

**For Violation of §15 of the 1933 Act**
**Against Funko, the Individual Defendants, ACON and Fundamental**

68.     Plaintiff repeats and realleges ¶¶1-67 by reference.

69.     This Cause of Action is brought pursuant to §15 of the 1933 Act against Funko, the Individual Defendants, ACON and Fundamental.

70.     The Individual Defendants were each control persons of Funko by virtue of their positions as directors and/or senior officers of Funko.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Funko.  The Company controlled the Individual Defendants and all of its employees.

71.     ACON and Fundamental effectively controlled Funko at the time of the IPO, and continue to have control over the Company by virtue of their control over a majority of the voting stock of the Company and a majority of the Company's Board and certain rights provided to them pursuant to a Stockholders Agreement and other agreements.  The Registration Statement states that Funko is a controlled company that is controlled by ACON and Fundamental, among others.

72.     The Individual Defendants were each culpable participants in the violations of §11 and/or §12(a)(2) of the 1933 Act alleged in the Causes of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the IPO to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a class representative under CR 23 and plaintiff's counsel as Lead Counsel;

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 – 18



B.      Awarding compensatory damages in favor of the plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding rescission or a rescissory measure of damages;

D.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper.


DATED:  January 18, 2018

                                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                    By:   s/ Steve W. Berman
                                        Steve W. Berman, WSBA #12536
                                        Karl P. Barth, WSBA #22780
                                        Dawn D. Cornelius, WSBA #50170
                                        1918 Eighth Avenue, Suite 3300
                                        Seattle, Washington  98101
                                        Telephone: (206) 623-7292
                                        Facsimile: (206) 623-0594

                                    ROBBINS GELLER RUDMAN& DOWD LLP
                                    SAMUEL H. RUDMAN
                                    58 South Service Road, Suite 200
                                    Melville, NY  11747
                                    Telephone:  (631)-367-7100
                                    Facsimile: (631) 367-1173

                                    ROBBINS GELLER RUDMAN & DOWD LLP
                                    JAMES I. JACONETTE
                                    BRIAN E. COCHRAN
                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101-8498
                                    Telephone:  (619) 231-1058
                                    Facsimile: (619) 231-7423



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HOLZER & HOLZER, LLC
COREY D. HOLZER
1200 Ashwood Parkway, Suite 410
Atlanta, GA  30338
Telephone:  (770) 392-0090
Facsimile: (770) 392-0029

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE
SECURITIES ACT OF 1933 – 20

